**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No.: 3:14-CV-295**

IMPACT TECHNOLOGIES GROUP INC.,
    Plaintiff

v.

THE IMPACT PARTNERSHIP LLC,
    Defendant

**VERIFIED COMPLAINT**

Impact Technologies Group Inc. ("Plaintiff" or "Impact Technologies") complains of The Impact Partnership LLC ("Defendant") as follows:

Plaintiff Impact Technologies Group Inc., owner of federally registered IMPACT marks, brings this action for trademark infringement and unfair competition against Defendant Impact Partnership LLC. Defendant's use of a nearly identical mark in the sale of computer software and related services infringe Impact Technologies' trademarks in North Carolina and elsewhere.

## PARTIES

1. Impact Technologies is a North Carolina corporation. Its principal place of business is in Charlotte.

2. Defendant Impact Partnership is a Georgia corporation. Its principal place of business is in Kennesaw, Georgia:

    a. Defendant has elected to conduct regular and ongoing business activity in North Carolina. On information and belief, Defendant or its products regularly enter the Western District of North Carolina to do business herein.

    b. Defendant conducts business in North Carolina under a Certificate of Authority. **Ex**. **1**.

    c. Defendant maintains a Registered Agent to accept service in North Carolina. **Ex**. **2** (updated April 2014).

    d. Moreover, Defendant has infringed (and continues to infringe) within this State and District.

    e. Additionally, Defendant financially benefits from operating its business within this State and District.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark) and 1367(a) (supplemental). Alternatively, the parties are citizens of different states, and the amount in controversy in this matter exceeds $75,000, exclusive of interests and costs; therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1332.

4. This Court has personal jurisdiction over Defendant Impact Partnership. As noted, Defendant is a business that regularly conducts business in North Carolina, including the Western District of North Carolina.

5. Venue is proper under 28 U.S.C. § 1391(b) as Defendant is doing business in this District, a substantial part of the events or omissions giving rise to the claims occurred here, Defendant advertises and transacts business in this District, and Defendant is otherwise subject to the personal jurisdiction of this judicial District.

## FACTS

## PLAINTIFF'S TRADEMARKS

6. Impact Technologies provides financial analysis solutions and related financial and investment products in connection with the IMPACT mark, which are covered by the following incontestable federal registrations (**Exs. 6-9**):

    a. <u>U.S. Reg. No. 1861263</u> which covers the following services:

      Providing computer programming services in the field of insurance, in International Class 42.

    b. <u>U.S. Reg. No. 1861636</u> which covers the following goods:

      Computer software, computer programs, computer programs and instructional manuals sold as a unit, for use in the field of insurance, in International Class 9.

    c. <u>U.S. Reg. No. 4123403</u> which covers the following goods and services:

      Computer software for use by financial and insurance advisors and their clients, namely, software for calculating financial needs analyses, as well as the effect of assets, income, and investments on those needs for use in the fields of financial planning, estate planning, insurance planning, retirement planning, business planning, financial needs analysis and business worksite marketing, in International Class 9; and

      Providing temporary use of non-downloadable computer software for use by financial and insurance advisors and their clients, namely, software for calculating financial needs analyses, as well as the effect of assets, income, and investments on those needs for use in the fields of financial

planning, estate planning, insurance planning, retirement planning, business planning, financial needs analysis and business worksite marketing, in International Class 42.

d. Additionally, Impact Technologies owns a federal trademark for the mark IMPACT'S RETIREMENT ROAD MAP, <u>U.S. Reg. No. 4194827</u>, for the following:

> Application service provider (ASP) featuring software in the field of financial planning, namely, software for calculating the financial needs of retirees, as well as the impact of assets, income, and investments on those needs, in International Class 42.

7. Impact Technologies has also acquired numerous common law rights in the IMPACT mark and variations thereof.

8. Impact Technologies has used the mark IMPACT for nearly 30 years. Since at least as early as October 1, 1984, Impact Technologies has been continuously striving to develop and market its IMPACT brand on a national stage in the fields of retirement, financial and estate planning, business planning, and insurance.

9. Impact Technologies products can be found at http://www.impact-tech.com/products.

### Defendant's Infringement

10. Defendant Impact Partnership LLC was organized in April 2011.

11. In August 2013, Impact Technologies learned that Defendant was using the IMPACT mark in connection with the sale of goods or services covering all of the above-referenced registrations ("Infringing Marks").

12. On August 22, 2013, Impact Technology informed Defendant Impact Partnership that its identical use of the IMPACT mark was both unauthorized and likely to cause confusion and damage Impact Technologies' brand. It demanded that Defendant cease and desist using the IMPACT mark in the of fields of insurance, financial planning, estate planning, retirement planning, and business planning.

13. On August 30, 2013, Defendant responded to Impact Technologies and stated, falsely:

    a. That it was nothing more than marketing conduit that connected financial advisors and insurance companies (whose products the advisors distribute).

    b. That its "services" included access to industry experts for marketing and advertising for insurance products.

c. That it did not provide any computer products, including computer products covered by the above-referenced incontestable registrations, such as computer software for financial planning.

d. That, given that was merely a conduit between a financial analyst and insurance companies, a sophisticated consumer would not be confused.

14. All of these assertions, above (¶ 13), were and remain categorically false.

15. Defendant's responsive letter, which was not marked confidential or for settlement purposes, is attached hereto as **Exhibit 3**. It demonstrates the absurdity of Defendant's reasoning.

16. Recently, Impact Technologies learned that Defendant is now actually marketing and selling products with its Infringing Marks in the exact same goods and services referenced above, including computer software and other materials appurtenant the fields of financial planning, estate planning, insurance, retirement planning, business planning, financial needs analysis and general business marketing.

17. For example, one of Impact Technologies most popular products is its Social Security Explorer. It is sold under the IMPACT brand and is accessible from http://www.impact-tech.com/products/. Defendant sells a competing product at www.impactpartnershipmarketing.com or www.impactpartner.com under its infringing "Impact Partnership" brand. **Ex. 4**. Defendant's product is "Social Security Edge," which is a product of "Impact Partnership's Social Security Selling System." **Ex. 5**. The IMPACT mark is littered throughout this flyer. *Id.*

18. On this day, a sampling of Defendant's infringement can be found at http://impactpartner.com/software/. This site includes the following software offered under the infringing "IMPACT Partnership" brand: (1) software for "RMD," which means "required minimum distributions," which is a financial planning term of art, especially for 401k and IRA withdrawals; (2) "Retirement Income Software"; and, (3) "Social Security Edge Software."

19. The following is a sample of infringement from Defendant's own website:



20. When one "CLICK[S] HERE TO LOGIN →," Defendant infringes again:



21. Defendant's Infringing Marks infringe Impact Technologies' incontestable trademark rights in the IMPACT mark.

22. In 2013, Defendant approached Plaintiff Impact Technologies about selling its software products — the same products that compete directly with Defendant's products under the IMPACT brand — through Defendant. Impact Technologies declined the offer for several reasons, explaining, *inter alia*, that:

    a. Defendant was infringing on Impact Technologies' marks. Though Impact Technologies had other strategic partnerships, it did not want to condone Defendant's conduct by partnering with it.

    b. Contracting with an entity that used descriptive word PARTNERSHIP, in addition to IMPACT, would only enhance a likelihood of confusion and would, at a minimum, signal an endorsement or "partnership" with an unauthorized competitor or infringer.

23. After being told "No," Defendant has willfully infringed Impact Technologies' trademarks and attempted to free-ride on Impact Technologies' goodwill.

24. Since then, Defendant has started marketing in the same trade journals that Impact Technologies markets in.

25. Since then, Defendant has deliberately taken advantage of Impact Technologies' goodwill in the marketplace to capitalize on consumer perception that its offerings, including its software offerings, are associated with the Impact Technologies brand.

26. Since then, there have been a number of instances of actual or industry confusion:

    a. Recently, an Impact Technologies' employee reached out to a customer, and to this end placed several phone calls. The client's secretary repeatedly refused to transfer the call. After much haggling regarding the purpose of the call, the customer finally took the call. The customer explained that he was actually confused: specifically, he was avoiding the calls because he was getting incessant marketing calls from an "Impact" entity, which was Defendant Impact Partnership rather than his provider, Impact Technologies.

    b. When a customer subscribes to an Impact Technologies product, there is a critical welcoming phase called "on boarding." Generally, this is the first time a customer meets Impact Technologies personnel, and the purpose of the call is to build trust and gather information to establish a long-term client relationship. The call, above (¶ 26(a)), was during a customer's "on boarding." Defendant

had created for Impact Technologies a terrible first impression by causing actual confusion.

c. Impact Technologies has received and continues to receive employment inquiries for positions that do not exist:

　i. In one instance, a John Doe *thought* he encountered an announcement that a "Mike Buckner" had joined Impact Technologies.

　　a. Mr. Doe was basically inquiring, "Where did this guy come from, I want his old job."

　ii. In reality, Mr. Buckner had never worked at Impact Technologies and had actually joined Defendant Impact Partnership on his own.

　iii. Mr. Doe reached out to Impact Technologies' President, Maxey Sanderson, in an attempt to learn more about the position that Mr. Buckner had seemingly left.

　iv. In actuality, Mr. Doe was confused about which corporation had an opening or which corporation Mr. Buckner joined.

27. Even more confusingly, and demonstrative of industry confusion, one of Defendant's employees, the aforementioned Mr. Buckner, is so confused that he incorrectly lists his employer as Impact Technologies on LinkedIn:



28. Curiously, Defendant's own website proudly declares the importance of one's brand. For this dispute, Defendant's willful conduct demonstrates that it could care less:



## Remarkable Branding

Posted on: August 15, 2013

Branding can make all the difference between a successful small business and one that fails to launch. Does your branding have what it takes?

The Impact Partnership's CMO, Ford Stokes, goes into detail on 11 sure-fire branding tips in his latest Fox Business article, "Marketing Tips to Set Your Brand Apart."

Ford speaks about the power of branding everyday to Impact's advisors and encourages them to build a solid foundation, starting with a unique and protectable business name, tagline and domain name.

He also talks about the importance of enhancing your digital footprint, executing perfectly, the famous Blue Ocean Strategy and Seth Godin's Purple Cow Theory, how first impressions matter, and much more.

Marketing your business successfully depends largely on these tips Ford outlines, along with a healthy dose of confidence. As Henry Ford said, "Whether you think you can, or you think you can't – either way, you are right."

With the right team on your side, there is no stopping your practice's growth and potential.

So don't forget: "Be remarkable."

To learn how you can set your brand apart, read Ford's article on Fox Business: http://smallbusiness.foxbusiness.com/marketing-sales/2013/08/14/remarkable-marketing-tips-to-set-your-business-apart/

29. On information and belief, Defendant is now using the IMPACT mark to aggressively market and sell its competing and infringing products, including but not limited to using search engine optimization techniques that employ the IMPACT mark and brand.

30. All of Impact Technologies' US registrations are valid, subsisting, and incontestable.

31. Impact Technologies has made continuous use of its IMPACT mark since October 1, 1984, in connection with goods of services covering financial, insurance, estate, tax, and other financial-related analyses.

32. Impact Technologies' IMPACT marks identify the source and origin of its goods to the public. The IMPACT mark also distinguishes its goods from the goods and services of others.

33. Through the use and registration of its mark, Impact Technologies has the exclusive right to use its IMPACT mark, and prohibit the use by others of all marks confusingly similar thereto in connection with, *inter alia*, goods and services for financial and insurance advisors, financial needs analyses (and related areas), financial planning, estate planning, and insurance.

34. Defendant's "Infringing Marks" are identical or nearly identical to Plaintiff's IMPACT marks, as referenced above in ¶¶ 6(a)-6(c).

35. The only difference between the Plaintiff's registered IMPACT marks, referenced in ¶¶ 6(a)-(c), and Defendant's "Impact Partnership" infringing mark is the additional descriptive word PARTNERSHIP.

36. Given the relatedness of the goods and services, as well as the targeted marketplace, the use of the word PARTNERSHIP only enhances a likelihood of confusion.

37. Defendant's use of its Infringing Marks are substantially similar or almost identical to those belonging to Impact Technologies.

38. Use of the Infringing Marks is likely to lead to confusion, to cause mistake, or to deceive.

39. On this day in Charlotte, North Carolina, Defendant's product is available to financial analysts and the general consuming public, thereby creating an ongoing North Carolina threat of trademark infringement. See, e.g., Ex. 4.

40. Defendant has no association with Impact Technologies Group Inc. Impact Technologies has not approved or authorized Defendant's infringing use of the IMPACT brand.

41. Defendant was notified of its infringements shortly upon the discovery of the same. Plaintiff served multiple cease and desist letters upon Defendant. But Defendant did not and will not cease and its conduct makes it clear that it will not cease.

42. At least in the market for goods and services for financial and insurance advisors, financial needs analyses (and related areas), financial planning, estate planning, and insurance, Defendant is infringing.

43. Indeed, actual confusion already exists with respect to Defendant's use of the mark.

## COUNT I
## Trademark Infringement
## 15 U.S.C. § 1114

44. Impact Technologies repleads the foregoing paragraphs as if pled anew.

45. Impact Technologies is the owner of U.S. Trademark Registration Nos. 1861263, 1861636, 4123403 and 4194827 for the marks discussed *supra* (¶ 6). These registrations constitute prima facie evidence of Impact Technologies ownership and exclusive right to use the registered marks.

46. Defendant's infringing use of the mark has already led to, and is likely to lead to further, confusion, mistake, or deception in violation of 15 U.S.C. § 1114.

47. On information and belief, Defendant's trademark infringement was and is intentional and willful.

48. Defendant's conduct has damaged and will continue to damage and irreparably harm Impact Technologies.

## COUNT II
## Trademark Infringement and Unfair Competition
## 15 U.S.C. § 1125(a)

49. Impact Technologies repleads the foregoing paragraphs as if pled anew.

50. Defendant's actions are likely to lead to confusion, to cause mistake, or to deceive in violation of 15 U.S.C. § 1125(a).

51. On information and belief, Defendant's trademark infringement was and is intentional and willful.

52. Defendant's' conduct has damaged and will continue to damage and irreparably harm Impact Technologies.

# COUNT III
## Unfair Competition under North Carolina Law
## NC Gen Stat § 75-1

53. Impact Technologies repleads the foregoing paragraphs as if pled anew, offering this third count in the alternative to the second.

54. Defendant's acts were in or affecting commerce in this State.

55. Defendant has engaged in an unfair or deceptive commercial act or practice, or unfair method of competition, by appropriating and infringing Impact Technologies' marks.

56. Defendant's conduct proximately caused actual injury to Impact Technologies.

57. Impact Technologies is therefore entitled to recover from Defendant its actual damages in an amount in excess of $10,000, or such other amount as may be proved at trial.

58. Moreover, Impact Technologies' attorneys' fees should be award, and its actual damages should be trebled pursuant to NC Gen Stat § 75-16.

## PRAYER FOR RELIEF

**WHEREFORE, Impact Technologies prays for judgment against Defendant as follows:**

1. Enjoining Defendant and its agents, servants, employees, and all persons in active association, concert, privity, or participation with it from doing, aiding, causing, or abetting all acts of trademark infringement and unfair competition pursuant to 15 U.S.C. § 1116 or Fed R Civ P 65, or other applicable law, on a temporary, preliminary and permanent basis;

2. Directing Defendant to deliver for destruction all goods, advertising, business cards, literature, and other forms of promotional literature or things bearing or showing the Infringing Marks in accordance with 15 U.S.C. § 1118;

3. Awarding damages to adequately compensate Impact Technologies' for the trademark infringement and unfair competition by Defendant;

4. Awarding Defendant's profits, any damages sustained by Impact Technologies, and the costs of the action in accordance with 15 U.S.C. § 1117(a);

5. Finding that this case is exceptional and awarding reasonable attorneys' fees to Impact Technologies pursuant to 15 U.S.C. § 1117(a) or, alternatively, awarding attorneys' fees under NC Gen Stat § 75-16;

6. Awarding pre- and post-judgment interest; and,

7. Awarding Impact Technologies such other and further relief as this Court deems just and proper.

This the 5th day of June 2014.

**SANDS ANDERSON PC**
*Attorneys for Impact Technologies Inc.*

/s/ David McKenzie
**David McKenzie**
Attorney for the Plaintiff
Sands Anderson PC
4101 Lake Boone Trl Ste 100
Raleigh, North Carolina 27607
Phone: 919-706-4200; Fax: 919-706-4205
Email: dmckenzie@sandsanderson.com
North Carolina State Bar No. 36376

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Case No.: __:__-CV-____

| IMPACT TECHNOLOGIES GROUP INC., Plaintiff | |
|---|---|
| v. | **VERIFICATION** |
| IMPACT PARTNERSHIP LLC, Defendant | |

I, James Maxey Sanderson, first being sworn, depose and say:

1. I am over 18 years old and competent to offer this Verification;
2. I am President of Impact Technologies Group Inc., a North Carolina for profit corporation with its principal place of business in Mecklenburg County;
3. I have read the Complaint filed in this matter; it was prepared at my direction by Impact Technologies Group Inc.'s attorney;
4. I VERIFY that the facts stated by my Attorney in my Complaint are true and correct to the best of my knowledge, information and belief; and
5. I DECLARE under penalty of perjury that the foregoing is true and correct.

Further, I sayeth not.

This the 3rd day of June 2014.

_____
James Maxey Sanderson

Sworn and subscribed before me this the 3 day of June 2014.

_____
Notary Public
Commission Expires: November 15, 2014

[SEAL]

{V0112955.1 018339-087903 }

OFFICIAL SEAL
Notary Public, North Carolina
County of Union
ANNETTE P. MORRIS
My Commission Expires November 15, 2014